IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. THOMAS EVANS (#B-50874), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Case No. 05 C 5115 ) ) |
| ALAN UCHTMAN, Warden, Menard Correctional Center, | ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Thomas Evans' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the reasons discussed below, the Court denies Evans' petition.

**BACKGROUND**

Evans does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinions affirming the judgments of the Circuit Court of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Ruvalcaba v. Chandler,* 416 F.3d 555, 560 (7th Cir. 2005). The Court, therefore, adopts the underlying facts as set forth by the Illinois Appellate Court, First Judicial District, in Evans' direct and post-conviction appeals. *See People v. Evans,* No. 1-99-1875 (1st Dist. July 27, 2001) (unpublished order); *People v. Evans*, No. 1-02-1110 (1st Dist. Nov. 26, 2003) (unpublished order).

**I.     Factual Background**

In 1993, a jury found Evans guilty of two counts of first degree murder. The Illinois Appellate Court reversed Evans' convictions concluding that Evans was entitled to a jury instruction on second degree murder. *See People v. Evans,* No. 1-94-0043 (1st Dist. Apr. 29, 1996) (unpublished order). On retrial, the Circuit Court conducted a bench trial in September 1998.

### A. Police Officers' Trial Testimony

Trial evidence from the 1998 bench trial reveals that on October 9, 1990 at about 3 a.m. Chicago Police Officers were dispatched to a residence at 5701 South Damen Street in Chicago, Illinois after Evans called 911 and explained that his wife shot him and then shot herself. When the police officers arrived at the residence, they found Evans in his underclothes lying in a puddle of mud in his backyard. Evans' head and feet were bloody.

When the police officers approached the back door of the home, they saw bloodstains on the stairs leading to the second floor apartment where Evans lived with his wife and two children. When the police entered Evans' apartment, they found Evans' wife, Mary Ann Evans, lying on the floor in a pool of blood. Her left hand was resting on a revolver that was on her chest. The police also noticed a trail of blood smeared in a "dragging pattern" which extended into the apartment's dining room. Adult sized footprints were visible in the blood, as well. Also, the officers found another pool of blood in the dining room along with four shell casings and a trail of blood leading into a bedroom.

One police officer testified that she followed the trail of blood into the bedroom and found two small boys in bed. One of the boys was huddled in a corner and appeared distressed. The other child, later identified as two-year old Deandre Evans, was lying in a fetal position and

appeared to be sleeping. The police officer testified that she ran her hand across Deandre's head and heard a gurgling sound. The officer noticed that blood was coming out of the child's mouth. The officer immediately called for medical assistance.

A forensic investigator also testified at trial. He testified that he found four .45 caliber cartridge casings on the dining room floor, one .45 caliber casing in the kitchen, a .38 caliber casing in the attic, and a discharged bullet under Mary Ann Evans' body. The forensic investigator performed gunshot residue tests on both Mary Ann Evans and Thomas Evans.

Another police officer testified that she talked to Evans on the morning of the murders when he was in the backyard. Evans stated that he did not know what had happened because he entered the house, heard two gunshots, and ran back downstairs. The officer testified that Evans was coherent at the time of this conversation.

### B. Attending Physician's Testimony

The attending physician at the emergency room testified that Evans was admitted with a head wound and an altered mental state. A blood test indicates that Evans' blood alcohol level was .131, well over the legal limit. Evans had a laceration on his head and cuts on his ankles and toes. The result of his CT scan was normal.

### C. Stipulated Evidence

The Circuit Court admitted evidence from Evans' 1993 jury trial pursuant to the parties' stipulation. The stipulation included testimony by the trace evidence expert that Mary Ann Evans and Thomas Evans both had gunshot residue on their hands. The medical examiner testified that Mary Ann had recent bruises and scratches on her face, chin, forearm, and thumb and that Mary Ann had died from gunshot wounds to her left cheek, left nostril, right hand, and

3

left thigh.  The medical examiner testified that the bullets that struck Mary Ann's head were fired from at least 18 inches away, and thus could not have been self-inflicted.  The medical expert also testified the Deandre died from a gunshot wound.  Specifically, the bullet entered Deandre's left shoulder, went through his spinal cord and lung, and exited near the armpit fold on the left side of his chest.

### D. 911 Recording

The State played a recording of Evans' 911 call at trial.  Evans told the 911 dispatcher that he had been shot and that his wife was dead.  Evans claimed that his wife shot him as soon as he came into the house.  When the dispatcher asked Evans who shot his wife, he initially replied that he did not know and then he said that she shot herself.

### E. Evans' Trial Testimony

At trial, Evans testified on his own behalf.  He stated that he came home from work around 3 a.m. that morning after working all day at his garage.  He testified that he had been drinking beer and whiskey throughout the day.  Evans then testified that he entered the apartment and undressed in the dining room.  His wife got up and they started to argue.  Evans told Mary Ann that he was leaving her and then their argument turned physical.  Evans and Mary Ann hit and pushed each other.  Evans then told Mary Ann that he wanted to take a bath and would leave directly thereafter.

Evans further testified that when he went to prepare his bath, Mary Ann hit him on the head with an object.  She then walked out of the bathroom and when she returned, she was carrying a gun and pointed it at him.  Evans testified that they started to "tussle" over the gun and it went off.  Evans could not remember how many times the gun discharged.  He then

4

testified that he called 911 and went downstairs, but "fell out" when he got to the back door. Evans had no further recollection of the incident.

In addition, Evans testified that he never saw his children come out of the bedroom and that he did not know that Deandre was injured. He also stated that he did not shoot his wife and that the struggle for the gun caused her wounds. Evans also denied moving Mary Ann's body and hitting her in the head and face. He also denied that he talked with the police officer in the backyard after the incident.

### F. Rebuttal Evidence

In rebuttal, the State called Detective John Halloran who testified that he interviewed Evans at the hospital after his condition had stabilized. Evans told the detective that as he left the back door of his apartment, his wife started shooting at him.

## II. Procedural Background

On May 17, 1999, following a bench trial in the Circuit Court of Cook County, the state court judge found Evans guilty of two counts of first degree murder for the 1990 shooting deaths of his wife and two-year-old son. The Circuit Court then sentenced Evans to natural life imprisonment.

Evans appealed his conviction and sentence to the Illinois Appellate Court, First Division, arguing that his convictions should be reduced to second degree murder because his actions were motivated by sudden and intense passion stemming from mutual combat with his wife. (R. 23-1, Respondent's Rule 5 Exs., Ex. A.) In other words, Evans argued that the evidence was insufficient to support a finding of guilty beyond reasonable doubt on the first degree murder charges. (Exs. B, C, D.)

5

On July 27, 2001, the Illinois Appellate Court affirmed Evans' conviction and sentence. (Ex. A.) The appellate court concluded that Evans' self-defense claim of provocation based on mutual combat lacked merit, and thus did not mitigate Evans' first degree murder conviction to second degree murder. (*Id.*) Evans then filed a pro se petition for leave to appeal to the Illinois Supreme Court. In his petition, he raised the claim that the evidence produced at trial was not sufficient to support a finding of guilt beyond a reasonable doubt on the first degree murder charges. (Ex. E.) On December 5, 2001, the Illinois Supreme Court denied Evans' petition for leave to appeal. (Ex. F.)

On January 22, 2002, Evans filed a pro se petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, raising the following claims: (1) that he was induced to waive his right to a jury trial by the Circuit Court's remarks which gave him the impression that if convicted, he would not be sentenced to life if he opted for a bench trial; and (2) the State suppressed evidence of a photograph of him which would have shown the serious injuries he suffered after struggling with his wife and that this photograph would have enhanced his argument that he was acting in self-defense or that he was acting in response to serious provocation. (Ex. G.) On March 7, 2002, the Circuit Court of Cook County summarily dismissed Evans' post-conviction petition. (Ex. H.)

Thereafter, Evans, by counsel, appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, First Judicial District, arguing that the Circuit Court erred in summarily denying his post-conviction petition. Specifically, Evans argued that the prosecution engaged in misconduct during its closing argument and that his trial counsel provided constitutionally ineffective assistance of counsel. (Exs. I, J.) On November 26, 2003, the

Illinois Appellate Court affirmed the Circuit Court's dismissal of Evans' post-conviction petition. (Ex. K.)

Evans then filed a pro se petition for leave to appeal with the Illinois Supreme Court raising the following claims: (1) ineffective assistance of post-conviction counsel; (2) the Illinois Appellate Court erred by affirming the Circuit Court's denial of his post-conviction petition because he stated a "gist of a constitutional claim;" (3) the Illinois Appellate Court and Circuit Court erred in failing to consider his mutual combat and self-defense claims; (4) both the trial and appellate courts erred in failing to consider that the conviction arising out of his son's death should have been for involuntary manslaughter; (5) both courts failed to consider his *Brady* claim; (6) both courts erred in rejecting his due process claim regarding the chain of custody of the murder weapon; and (7) both courts erred in failing to consider his Sixth Amendment Confrontation Clause claim. (Ex. L.) On October 6, 2004, the Illinois Supreme Court denied Evans' petition for leave to appeal. (Ex. M.)

Before the Court is Evans' amended petition for habeas corpus relief pursuant to 28 U.S.C. § 2254(d)(1). Construing his *pro se* habeas petition liberally, *see Myles v. United States,* 416 F.3d 551, 552 (7th Cir. 2005), Evans raises the exact same claims that he raised in his post-conviction petition for leave to appeal as enumerated directly above.

## LEGAL STANDARDS

**I.     Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was (1) contrary to, or an unreasonable application of law clearly established by the Supreme Court or (2) was "based on an

7

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005) (citing 28 U.S.C. § 2254(d)(1-2)); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow,* 398 F.3d at 602; *see also Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (state court decision must be objectively unreasonable).

To be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *see also Hubanks v. Frank*, 392 F.3d 926, 929 (7th Cir. 2004) (to be reasonable, state court decision must be minimally consistent with facts and circumstances of case or one of several equally plausible outcomes).

## II. Procedural Default

Before bringing a habeas claim in federal court, the petitioner must exhaust all remedies

available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). Specifically, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentment requires the petitioner to set forth the operative facts and controlling legal principles for each of his claims. *Bintz,* 403 F.3d at 863. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the court's failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496; *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005) (factual innocence relieves habeas petitioner of procedural default).

## ANALYSIS

**I.      Evans' Procedurally Defaulted Claims**

The Court first addresses Evans' procedurally defaulted claims which include his self-defense claim, involuntary manslaughter claim, chain of custody claim, and the Sixth Amendment Confrontation Clause claim, all of which were raised for the first time in Evans' petition for leave to appeal his post-conviction petition to the Illinois Supreme Court. Furthermore, although Evans raised his *Brady* claim concerning photographs in his post-conviction petition, he failed to address this issue in his post-conviction appeal to the Illinois Appellate Court. Because Evans did not properly assert these claims at each level of state court review, he has procedurally defaulted them. *See Lewis,* 390 F.3d at 1026; *see also Boerckel,* 526 U.S. at 848.

Further, Evans has not overcome the procedural default of these claims. Although he blames his trial and appellate counsel for failing to properly bring some of these claims, he fails to give any cogent explanations pertaining to actual prejudice. *See Coleman,* 501 U.S. at 750. In fact, Evans admits that the circuit court judge explained to him that the evidence against him was not only overwhelming, but his trial counsel's actions fell well within the standards of practitioners representing clients charged with capital murder. (R. 14-1, Amend. Habeas Petition, at 31; R. 23-6, Petition for Leave to Appeal, at 7.) In addition, Evans does not make any arguments concerning his actual innocence. *See Murray,* 477 U.S. at 496. Therefore, the Court need not address the merits of these defaulted claims.

## II. Remaining Habeas Claims

### A. Ineffective Assistance of Post-Conviction Counsel

Evans first claims that his post-conviction counsel rendered constitutionally ineffective assistance of counsel. Because criminal defendants do not have a Sixth Amendment right to

post-conviction counsel, any argument based on post-conviction counsel's errors simply fails. *See Coleman,* 501 U.S. at 72 (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).

### B. "Gist" of a Constitutional Claim

Next, Evans contends that the Circuit Court erred in summarily dismissing his post-conviction petition and that the Illinois Appellate Court erred in affirming the Circuit Court's dismissal. Specifically, Evans argues that the Circuit Court should not have summarily dismissed his post-conviction petition because he presented the "gist" of a constitutional claim, which is all that is required under Illinois law to survive summary dismissal. *See People v. Edwards,* 197 Ill.2d 239, 244, 258 Ill.Dec. 753, 757 N.E.2d 442 (2001). Under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, post-conviction proceedings contain three stages, including the first stage where the circuit court independently reviews the defendant's petition to determine if the petition is frivolous or patently without merit. *Edwards,* 197 Ill.2d at 244. If the court decides that the petition is either frivolous or patently without merit, the court must dismiss the petition. *Id.* A post-conviction petition is frivolous or patently without merit only if the allegations in the petition do not present the "gist" of a constitutional claim. *Id.*

Here, Evans' claim does not concern whether his conviction violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Instead, his argument is based on the state court procedures pursuant to the Illinois Post-Conviction Hearing Act. Accordingly, Evans' claim is not cognizable on habeas review because it involves a question of state procedural law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also*

11

*Perruquet v. Briley,* 390 F.3d 505 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review").

### C. Insufficiency of the Evidence Claim

Last, the Court addresses Evans' argument that his convictions for first degree murder should be reduced to second degree murder because his actions were motivated by the sudden and intense passion stemming from mutual combat with his wife. Construing Evans' pro se argument liberally, he argues that the evidence presented at trial was insufficient to support a finding of guilty beyond reasonable doubt on the first degree murder charges.

When assessing a sufficiency of the evidence claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). The standard under *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Courts defer to a factfinder's credibility determinations and will overturn verdicts only if "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings,* 395 F.3d 392, 397 (7th Cir. 2005) (citation omitted).

In examining Evans' sufficiency of the evidence claim in the context of Evans' argument that he was in mutual combat with his wife, the Illinois Appellate Court concluded:

> In the instant case, the evidence does not establish that defendant and Mary Ann were mutually fighting when she threatened him with the gun. Although defendant testified that he and Mary Ann were mutually fighting in the dining room over his threat to leave the home, he also testified that the fight

12

ended after he retreated into the bathroom to bathe. Defendant claims that the fight was re-initiated when Mary Ann came into the bathroom and hit him on the head with an object. However, defendant did not state that he physically retaliated after being hit.

According to defendant, Mary Ann left the bathroom after hitting him and returned with a revolver. Defendant stated that while Mary Ann pointed the gun at him, he was "crying and hollering." Defendant explained that Mary Ann "said she was going to kill [him]" and that he was "tussling" with her over the gun because he was "trying to keep her from shooting [him]."

Taken as true, this testimony shows that defendant was not involved in mutual combat with his wife when she attacked him with the gun. Indeed, defendant's testimony suggests that he was unwillingly forced to struggle with Mary Ann over the gun to keep from being shot. Based on this evidence, we find that defendant's claim of provocation based on mutual combat lacks merit.

Even if we were to find that defendant and Mary Ann were engaged in mutual combat, the evidence was insufficient to demonstrate that defendant responded proportionately to the provocation. Mary Ann was shot at least three separate times, and two of the shots were fired into her head. Defendant's claim of provocation based on mutual combat would not justify this disproportionate response. Accordingly, the mutual combat aspect of provocation is insufficient to mitigate defendant's first degree murder conviction to second degree murder.

*People v. Evans,* No. 1-99-1875, at 9-10 (footnote omitted).

The Illinois Appellate Court's decision is an objectively reasonable application of clearly established Supreme Court precedent.[1] The Illinois Appellate Court reviewed the trial evidence, including Evans' testimony, before concluding that Evans and his wife were not mutually fighting, and thus Evans was not entitled to the lesser conviction of second degree murder. *See* 720 ILCS 5/9-2. The Illinois court's decision is minimally consistent with the facts and circumstances of the case because Evans' own testimony establishes that his wife attacked him and that he was unwillingly forced to struggle with her, not that they were both willingly fighting

---

[1] Evans does not argue that the Illinois Appellate Court's decision was "contrary to" clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

13

when he shot her twice in the head. *See People v. Delgado*, 282 Ill.App.3d 851, 858, 218 Ill.Dec. 10, 668 N.E.2d 173 (Ill.App.Ct. 1996) (parties must have mutual intent to fight). As such, Evans has not convinced the Court that the Illinois Appellate Court's determination was objectively unreasonable and that the verdict should be overturned. *See Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (habeas petitioner has burden of proof to establish state court's application of Supreme Court law was unreasonable).

## CONCLUSION

For these reasons, the Court denies Evans' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: February 21, 2006

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**